**STATE of Utah, Plaintiff and Respondent,**

**v.**

**Marvin Kent REDDISH, Defendant and Appellant.**

**No. 14344.**

Supreme Court of Utah.

May 26, 1976.

Stephen A. Laker, Ogden, for defendant and appellant.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Defendant Marvin Kent Reddish was convicted by a jury of rape, a second-degree felony.[1] The errors he charges in seeking to overturn his conviction form a familiar pattern: (1) That the evidence is not sufficient to support the verdict; (2) in instructing the jury; and (3) in admitting statements he made to the police without being fully advised of his constitutional rights.

As is invariably true in such cases, the defendant's version of what occurred is sharply different in vital aspects from the State's evidence. Where such differences occur, we are obliged to assume that the jury believed that which supports their verdict.[2]

This offense arose out of an episode which originated at Sambo's Restaurant in

1. Section 76-5-402, U.C.A.1953.

2. *State v. Wilcox*, 28 Utah 2d 71, 498 P.2d 357 (1972) ; *State v. Siddoway*, 61 Utah 189, 211 P. 968 (1922).

Ogden after midnight on April 19, 1975. Pursuant to conversation, the defendant joined the prosecutrix and her girl friend for a drive to visit another friend. After they arrived, defendant and prosecutrix went for a walk toward the river, where the defendant announced his intention of having sexual intercourse with the prosecutrix. She refused, resisted, screamed, and tried to get away. But the defendant seized and held her, choked her and threatened her life, which overcame her resistance. After returning to the car, the three drove back to Sambo's, where the defendant had left his automobile.

Immediately on his leaving, the prosecutrix told her companion what had happened, the women took down the defendant's license number, and called the police, who responded and conducted an investigation, including having the prosecutrix examined by a physician. The physical evidence included the fact that she had fresh scratches on her face and bruises on her neck. The officers also found that where the prosecutrix said the struggle had taken place the ground was indeed torn up. The defendant's own version did not say that the prosecutrix was willing. What he asserts is that her resistance was merely token; and that under those facts a verdict of forcible rape is not justified.

The statutes with which we are concerned are Section 76–5–402, U.C.A. 1953, which defines rape as "sexual intercourse with a female, not his [the defendant's] wife, without her consent." Section 76–5–406 in turn defines "without her consent":

(1) When the actor [defendant] compels the victim to submit or participate by force that overcomes such earnest resistance as might reasonably be expected under the circumstances; or (2) The actor compels the victim to submit or participate by any threat that would prevent resistance by a person of ordinary resolution; . . .

From that statute it is seen that the overcoming of the victim's will can be accomplished either by force or by threats; and it may also be accomplished by a combination of them, which the State's evidence tends to show here.

At the trial the roles of the defendant and the prosecutrix were reversed from what they had been at the time of the offense. Instead of being the aggressor, with the prosecutrix as the protester, the defendant assumed the role of the protester, arguing that the resistance was not sufficient to constitute forcible rape. With this the defendant combines a contention that the trial court erred in refusing to sufficiently instruct the jury what would constitute the required "earnest resistance." On this we observe: The trial court gave an instruction which included the statute quoted above. It is our opinion that no further elaboration was necessary to meet the requirement of making clear to the jury that the force and threats had to be of such character and had such an effect upon the prosecutrix as to overcome an earnest desire on her part to resist.[3]

Defendant also assigns error in the failure of the trial court to give a cautionary instruction to the effect that a charge of rape is easy to make and difficult to disprove. In view of the policy of our law of leaving the judging of the evidence exclusively to the jury, without comment from the court,[4] instructions of that character are not looked upon with favor, because they actually amount to comments on or characterizations of evidence;[5] and this is a matter which can be and was argued to the jury.

Defendant's final assignment of error relates to admitting testimony of statements he made to the police, without being

3. See *State v. Nunez*, 520 P.2d 881 (Utah 1974).

4. *State v. Green*, 78 Utah 580, 6 P.2d 177.

5. *State v. Rutledge*, 63 Utah 546, 227 P. 479 (1924).

given a full recital of all of his constitutional rights. When he was apprehended, the police officers informed him that he had the right to remain silent; that anything he said may be used against him; that he had the right to have an attorney present; and that if he could not afford an attorney, one would be provided. Defendant makes no argument concerning the truthfulness of the statements he made, nor is anything said about its bearing upon his guilt or innocence. His argument on this point is that it was not made clear to him that he could assert these rights at any time, and not merely at the beginning of the questioning. Wherefore, he contends that statements elicited from him were tainted with the duress of police questioning and inadmissible. Under the circumstances we see no abuse of his rights which should be deemed prejudicial to his having had a fair trial.

Affirmed. No costs awarded.

HENRIOD, C. J., and ELLETT and TUCKETT, JJ., concur.

MAUGHAN, J., concurs in the result.